Ethel C. DEAKYNE, Plaintiff,

v.

COMMISSIONERS OF LEWES, a Delaware corporation, Board of Public Works, a quasi-corporate body, Gilbert M. Wiltbank, Daniel H. C. Littleton, William T. Manning, Clayton H. Ellis, Thomas B. Morris, Sr., Perry T. Burton, and Bayard Coulter, Defendants.

Civ. A. No. 2969.

United States District Court
D. Delaware.

June 3, 1968.

Clement C. Wood, Allmond & Wood, Wilmington, Del., and Basil C. Clare, Chester, Pa., for plaintiff.

Jackson W. Raysor, Tunnell & Raysor, Georgetown, Del., for defendants.

OPINION

STEEL, District Judge.

Plaintiff, the holder of the record title to real estate in Lewes, Delaware, includ-

ing the bed of a roadway traversing it, brought an action against the defendants, the Commissioners of Lewes, the Board of Public Works, and its General Manager Coulter, for an alleged trespass occasioned by the building of a sewer line across the land within the area of the roadway.[1] The jury returned a verdict in favor of plaintiff assessing defendants with ordinary damages in the amount of $16,000 and punitive damages in the amount of $600. Judgment for $16,600 has been entered against defendants.

The case is before the Court upon the motion of defendants for judgment n. o. v., or in the alternative, for a new trial.

### Motion for Judgment N.O.V.

■ At the close of the evidence defendant Coulter moved for a directed verdict. No similar motion was made on behalf of any of the other defendants. This deprives them of status successfully to move for a judgment n. o. v. under Fed.R.Civ.P. 50(b), and an order denying the motion as to such defendants has been entered. Since decision on Coulter's motion was reserved, it must be determined.

The gravamen of the offense charged is that defendants caused a sewer line to be constructed across the land of the plaintiff and that this constituted a trespass (Pretrial Order May 10, 1967). The erection and maintenance of sewage lines was the responsibility of the Board of Public Works (Record at 150). The Board employed the engineers, Gardner & Sterling, to consult with it and to prepare plans for the line. The Board approved the plan submitted by Gardner & Sterling (Record at 283). It employed the contractor who laid the line (Record at 365).

■ The defendant Coulter was employed as General Manager of the Board (Record at 51). He had no right to vote upon Board matters (Record at 288). His function was limited to making rec-

ommendations or criticisms with respect to a project (Record at 288). He did not "cause" the sewer line to be built. His motion for a directed verdict will be granted.

### Motion of Defendants for a New Trial

Defendants contend that the Court erred as a matter of law in denying the defendants' motion to amend the pleadings to conform to the evidence, and in refusing to charge the jury on the significance of 17 Del.C. § 509. It provides:

"All public roads, causeways and bridges laid out as such, or made by lawful authority, or which have been used as such and maintained at the public charge for 20 years or more are declared to be common highways. The usage by the public for 20 years or more of any road shall not cause the road to become a common highway or public road, unless the same has been maintained at the public charge for 20 years or more."

In justifying the laying of the sewer line, the defendants' answer filed on March 4, 1965 pleaded as an affirmative defense:

"10. In or about the year 1937, the aforementioned Anglers Road was constructed by the Commissioners of the Town of Lewes with public funds as and for a public road and the same has been continuously in use as a public road from 1937 to the present and has at all times been maintained through the use of public funds as a public road."

While the answer did not expressly mention 17 Del.C. § 509, its language brought the defense within the terms of the statute. In effect, the answer pleaded the statute.

If the road under which the sewer was laid was a public road as defined in 17 Del.C. § 509, then the defendants were authorized to construct the sewer by virtue of 22 Laws of Delaware Ch. 196, § 4

1. The action has been dismissed by consent as to Perry T. Burton, a member of the Board of Public Works.

(1901), as amended, 51 Laws of Delaware Ch. 227, § 1 (1957). That Act authorizes the Board of Public Works of Lewes to do all things necessary for the erection, maintenance and operation of a sewage disposal plant and an improved sanitary and storm sewerage and drainage system. To effect this object, the Board is empowered "to law pipes or other apparatus under or along any public street, land or alley of said town and area served or to be served or any public roads adjacent thereto." [2]

The defense pleaded in paragraph 10 of the answer was relied upon by defendants until the pretrial conference, held on May 10, 1967. At that time defendants stated that they had no evidence to prove twenty years of maintenance of the road by the Town of Lewes with public funds, as section 509 required. They, therefore, stated that their only defense would be that when the pipe was laid under the road they had title to the road by adverse possession.[3] This was tantamount to an abandonment of the statutory defense which defendants had initially pleaded. The specification in the pretrial order filed on May 10th of "Issues of Law to be Litigated" was consistent with this for neither section 509 nor its substance was mentioned in the order. On the other hand, adverse possession, although not previously pleaded as a defense, was specified as an issue to be resolved.

On May 15, 1967, the first day of trial, a supplemental pretrial order was filed which reaffirmed that adverse possession was the only defense which defendants would rely upon.

Defendants' motion to amend the pleadings to conform to the evidence by pleading the provisions of 17 Del.C. § 509 was not made until after the close of all of the evidence (Record at 396, 401).

The facts which appear to be particularly relevant to the motion are the following:

First, after the supplemental pretrial order was entered on the first day of trial making adverse possession by defendants their only defense, section 509 was never again mentioned until defendants had introduced some evidence through their first witness. Then, in chambers, the Court stated that it felt that section 509 should be considered (Record at 255 I–256).[4] *At this point, defendants gave no indication of any desire to rely upon the statute as a defense.*

Second, later, after both sides had rested, the Court again asked why section 509 was not relevant (Record at 387). Defendants thereupon stated that they intended to ask for an instruction on section 509 but said that before any instruction could be asked for, they had to get in the record (as they then claimed to have done) evidence of public maintenance of the road (Record at 389). Thereafter, the Court said that it would charge on the statute (Record at 390–391, 394–396). This is because the Court was then of the view that any charge based solely upon the adverse possession defense, would not legally support a verdict for defendant, if one were returned. Plaintiff argued that to inject the statutory defense at the end of the trial would be prejudicial in that he had no real time to research the law applicable to it (Record at 395 N).

Third, the defense was not tried with the express or implied consent of the plaintiff. Plaintiff consistently objected to it. The defense was eliminated by the supplemental pretrial order entered on the first day of the trial. It was not included in the written prayers submitted by defendants on the first day of the trial. When, after defendants' first witness had begun to testify, the Court raised

---

**2.** A later amendment is found in 53 Laws of Delaware Ch. 280, § 1 (1961), but it is not relevant to the present problem.

**3.** Defendants' Brief at 2–3.

**4.** Prior to this time section 509 had never been mentioned by anyone, although, as stated, the answer pleaded facts to bring the defense within the statute.

the question of the relevance of section 509 defendants said nothing about their intention to rely upon it.

■ It is reasonable to conclude, in light of this combination of circumstances, that the defendants relinquished or abandoned their right to plead the defense. This is particularly true when they remained silent after the Court suggested that the statute might possibly be a defense, for at that time the defendants had located the witnesses who could testify to public maintenance of the road. In spite of its earlier statement that it would charge on section 509, the Court finally concluded not to do so (Record at 395 P).[5]

Defendants attempt to excuse their delay in seeking to amend the pleadings prior to the close of the evidence. Thus, they assert that it was not until May 12th that they learned of witnesses who might be helpful in proving that the roadway was maintained by public funds for a period of twenty years, a *sine qua non* for the operation of section 509. Defendants point out that they included the names of these witnesses in the supplemental pretrial order which was filed on May 15th (Defendants' Brief at 3). *The fact is, however, that this same supplemental pretrial eliminated section 509 as a defense and restricted the defense solely to adverse possession.*

Three questions necessarily arise: First, why, since the action was begun on February 10, 1965, was the availability of the witnesses to testify on public maintenance not discovered prior to May 12, 1967? Second, why, knowing of the availability of these witnesses, did defendants agree on May 15, 1967 to the supplemental pretrial order which eliminated section 509 as a defense? Third, why did defendants not assert their intention to rely upon the statute when the Court first raised the question of its pertinence to defendants' case when defendants' first witness was on the stand? No

satisfactory answer has been supplied by defendants to any of these questions.

In one sense it may seem unfair to permit a verdict to stand when defendants were denied the opportunity to rely upon the statutory defense. But it is equally, if not more, unjust to require plaintiff to be subjected to the inconvenience and expense of another trial when defendants could have readily avoided the problem by timely action.

At the trial the Court concluded that the motion to amend the pleadings to conform to the evidence should be denied. Further reflection convinces the Court that its action was correct.

Defendants next argue that the Court erred in ruling, on the damages issue, that the defendants were limited to proving restoration costs at the date of trial, rather than as of 1962 when the sewer line was laid.

The portion of the record which relates to this contention is found at 365–372. The record discloses that the parties were at odds concerning the measure of damages to apply if the jury should find that a trespass had been commited. Plaintiff argued that the injury to the land was permanent, and therefore she was entitled to the difference in the value of the land before and after the trespass. Defendants, on the other hand, argued that the injury to the land was temporary, and that plaintiff was entitled to a lesser amount of damages measured by the cost in 1962 of removing the pipeline and restoring the roadway to its former condition plus interest to the date of trial. It is not necessary to pass upon the validity of these contentions.

■ The Court stated that it would allow evidence on the cost of removing the pipeline, but that the cost of laying the line in 1962 was not relevant to the cost of removing it in 1967. It, therefore, sustained the objection of plaintiff to an inquiry designed to establish the installation cost in 1962 (record at 369–

5. The transcript shows that the discussion related to 17 Del.C. § 511. The parties agree section 599 alone was involved.

370). It stated that if the defendants' theory of damages was right the plaintiff would be entitled to an amount of money which would enable him *today* to restore the property to its former condition (Record at 370–371). It may be that the Court was in error in stating that restoration cost, if relevant, must be shown at the time of trial rather than at the time of the installation. Nonetheless, the Court offered defendants the opportunity to make a proffer of proof to substantiate its damage theory. Defendants declined to make such a proffer (Record at 371–372). Without it, defendants have failed to establish that they were prejudiced by the ruling which the Court made, even assuming *arguendo* its ruling was erroneous.

Other arguments made by defendants in support of their motion for a new trial have been considered but are deemed to be without merit. Defendants' motion for a new trial will be denied.